IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRAFT FOODS GROUP BRANDS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 c 0780 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CRACKER BARREL OLD COUNTRY | ) | |
| STORE, INC., CBOCS PROPERTIES, INC., | ) | |
| and JOHN DOES 1-10, persons or entities | ) | |
| whose present identities are unknown, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED ORDER GRANTING PRELIMINARY INJUNCTION**

This matter is before the court on the motion of plaintiff Kraft Food Group Brands LLC ("Kraft") for a preliminary injunction against defendants Cracker Barrel Old Country Store, Inc. ("CBOCS") and CBOCS Properties, Inc.[1] For the reasons described below, the court grants plaintiff's motion.

The court makes the following findings of fact and conclusions of law[2]:

1. The court adopts and incorporates the parties' stipulation of undisputed facts (Doc. 75).

2. Jurisdiction and venue are proper in this court.

---

[1]On March 14, 2013, the court granted the motion by John Morrell & Co. d/b/a John Morrell Food Group ("John Morrell") to intervene (Doc. 23). John Morrell is the licensee that has contracted with CBOCS to sell various meat products in grocery stores under the CBOCS name.

[2]This order contains both findings of fact ("Findings") and conclusions of law ("Conclusions"). To the extent that any Findings may be deemed conclusions of law, they shall also be considered Conclusions. To the extent that any Conclusions may be deemed findings of fact, they shall also be considered Dorered Findings. See Miller v. Fenton, 474 U.S. 104, 113-14 (1985).

3.  **Likelihood of success on the merits**: (a) The court finds that Kraft is likely to prevail on the merits of its trademark infringement and unfair competition claims (15 U.S.C. §§ 1114(1) and 1125(a)). Kraft need only show a "better than negligible" chance of success on the merits, and has more than sufficiently carried this burden. <u>Ty, Inc. v. Jones Group, Inc.</u>, 237 F.3d 891, 895 (7th Cir. 2001). The court finds that Kraft owns a protectable mark in the CRACKER BARREL mark and that its rights in this mark are superior to those of CBOCS. The Kraft mark was registered and in use in 1957, well before the opening of any CBOCS restaurant or store or use of the name "Cracker Barrel," and the 1970 correspondence between the two entities acknowledges Kraft's superior claim to the mark. Kraft's mark is indisputably strong, with annual sales in excess of $130 million and a presence in over 16,000 U.S. stores.

    (b) The court finds that there is a likelihood of confusion between Kraft's Cracker Barrel mark and the mark licensed by CBOCS to John Morrell. The court assesses likelihood of consumer confusion by examining a number of factors, including: (1) the similarity of the marks in appearance and suggestion, (2) the similarity of the products with which the marks are used, (3) the area and manner of the marks' concurrent use, (4) the likely degree of care used by consumers, (5) the strength of the plaintiff's mark, and (6) the existence of actual confusion. <u>AutoZone, Inc. v. Strick</u>, 543 F.3d 923, 929 (7th Cir. 2008).

    (c) As an initial matter, the Kraft mark consists of the words "CRACKER BARREL" in uppercase letters. The CBOCS mark features the words "Cracker

Barrel" prominently within a kidney bean shape, with the "Old Country Store" addendum in much smaller type at the bottom of the mark. As Kraft points out, CBOCS has disclaimed the "Old Country Store" phrase in its trademark registrations, and admits that its brand is regularly referred to as simply "Cracker Barrel," including on its website and social media pages. Although the font and style of the "Cracker Barrel" phrase is different from the Kraft mark, and the CBOCS mark includes a pictorial representation of a barrel and a figure of "Uncle Herschel," the words "Cracker Barrel" are the predominant feature of the mark. A consumer who views the Kraft mark briefly in the dairy section of the grocery store and subsequently views the CBOCS mark in the deli or meat section of the same store may not distinguish between the two brands. The similarity of the marks will likely contribute to confusion.

(d) The products' somewhat complementary nature may also contribute to confusion. As Kraft points out, many companies, including John Morrell, sell both ham and cheese under the same mark. Although defendants argue that whole hams and snacking cheeses are not served together and are therefore not complementary, the relevant inquiry is whether a consumer purchasing a CBOCS ham will believe it comes from the same source as the Kraft cheese. Further, because John Morrell intends to distribute deli meats under the CBOCS license, and those products are complementary to cheese, there is a substantial risk that consumers will believe Kraft cheese and CBOCS licensed meats come from the same source.

3

(e) Because CBOCS intends to sell their licensed meat products in grocery stores nationwide, there is overlap in the intended markets. Defendants argue that the distance between the dairy case and the refrigerated meat section will mitigate any confusion potential customers may experience. The court does not find this argument compelling, as CBOCS' own witness, John Pauley, the Executive Vice President of Sales and Marketing at John Morrell, testified that the products John Morrell intends to sell under the CBOCS name (including ham, bacon, lunchmeat, glazes for meat, jerky and summer sausage) will be placed throughout grocery stores. Although CBOCS claims that its brand is already in grocery stores in the form of gift cards, the testimony of defendants' witness Ed Greene indicates that those cards are sold primarily in the check-out area, or in displays of only gift cards. The court finds that the placement of various CBOCS branded food items throughout the stores will contribute to consumer confusion regarding the source of the products.

(f) There is also substantial evidence that retailers who have carried the CBOCS line of hams have used the Kraft "Cracker Barrel" mark in their stores in a manner that exacerbates confusion, describing the ham simply as "Cracker Barrel" spiral-cut ham. Although Mr. Pauley asserted that John Morrell will exert some control over retailers' advertising, he also conceded that they will not have control over how the products are displayed or advertised in the store. Such in-store advertising will likely cause added consumer confusion.

(g) The parties' surveys confirm the likelihood of confusion. Kraft's expert, Hal Poret, concluded there was an 18.8% confusion rate among surveyed consumers. The Poret survey was appropriately conducted on a national scale (defendant's intended distribution area), utilized sound methodology, and produced credible results. The court is not convinced that the survey conducted by defendants' expert, Phillip Johnson, appropriately measured potential confusion because it was conducted primarily in areas with heavy CBOCS presence.

4. **No adequate remedy at law** and **Irreparable harm**: The Seventh Circuit presumes that when a trademark is infringed there is no adequate remedy at law and that the plaintiff will suffer irreparable harm. Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir.1982). Kraft does not rely on this presumption, but instead argues that once CBOCS branded food products are introduced into grocery stores, the Kraft Cracker Barrel brand will be overwhelmed and diluted. The court agrees. If CBOCS is allowed to license its mark to John Morrell and the proposed meat products are distributed in grocery stores, Kraft's mark will be diluted. Kraft claims that its losses will be difficult to calculate because lost sales will not be the only harm. Kraft asserts that it will lose its ability to control the reputation of its brand, and the court agrees. This potential harm is significant and weighs heavily in favor of a preliminary injunction.

5. **Balance of harms**: The court finds that the harm to Kraft significantly outweighs the potential harm to CBOCS and John Morrell. This is a new venture for

CBOCS, and its cessation will not damage CBOCS' primary operations. The launch of the spiral hams by John Morrell was a limited launch. As Mr. Pauley testified, John Morrell did not suffer any cancelled contracts or cancelled purchase orders as a result of the limited launch. No product was destroyed once the suit was initiated. Because defendants and John Morrell have voluntarily withdrawn from the market pending resolution of the instant motion, the status quo can be maintained without further losses to defendants. Although John Morrell may have invested resources in developing this line of products, the damage done by an injunction would not outweigh the potential damage to Kraft.

6. **Public Interest**: The court finds that the public interest would be served by keeping the marketplace free of confusion.

7. **Defenses**: CBOCS also raises arguments based on laches and acquiescence. The court finds these arguments to be without merit.

(a) CBOCS asserts that Kraft acquiesced to its expansion of its business into other trade channels such as selling food products in its own restaurants and stores, through a catalogue, and on the internet. Acquiescence occurs when "the trademark owner, by affirmative word or deed, conveys its implied consent to another." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:41 (4th ed.1997); see also TMT N. Am., Inc. v. Magic Touch GmbH, 124 F.3d 876, 885 (7th Cir. 1997). Defendants cannot identify any affirmative statement by Kraft granting CBOCS the right to use the Cracker Barrel mark on any food product sold in grocery retail channels. Defendants

instead point to Kraft's alleged failure to object to CBOCS' expansion. The court finds that any acquiescence on Kraft's part to CBOCS' distribution of branded food products was limited to CBOCS' own restaurants, stores, internet site, and catalogue. The only CBOCS-branded product sold in grocery stores was the gift card, and that item was redeemable only at CBOCS' restaurants and store locations. This limited encroachment is not sufficient to demonstrate that Kraft acquiesced in CBOCS' expansion of food products into retail grocery stores.

(b) CBOCS also argues that CBOCS and Kraft engaged in conversations in 2006 regarding the licensing of food products in grocery stores. This laches argument fails because the email and documentary evidence do not reflect any agreement by Kraft to allow CBOCS to license products for grocery store sales. Instead, the documents show that Kraft expressed concern at CBOCS' expanded use of the mark, and Kraft explicitly requested that CBOCS contact Kraft prior to any licensing. CBOCS then launched the John Morrell-licensed products (six years later) without any notice to Kraft, despite this request. Later internal documents produced by defendants indicate a continuing concern by them about Kraft's rights to the Cracker Barrel mark. The testimony of Ed Greene, defendant's witness, attempting to contradict the obvious import of these exhibits is not credible, and Mr. Greene was effectively impeached on cross-examination. The court rejects CBOCS' laches defense.

8. **Bond:** The court grants plaintiff's motion for preliminary injunction, on the condition of Kraft's posting a $5 million bond to protect defendants in the event they are found to have been wrongfully enjoined.

For the reasons discussed above, it is hereby ordered:

1) Defendants Cracker Barrel Old Country Store, Inc. and CBOCS Properties, Inc., along with all persons and entities acting in concert therewith (specifically including intervenor John Morrell) are preliminarily enjoined during the pendency of this litigation or until further order of court from manufacturing, advertising, distributing, shipping, promoting, offering for sale, selling or licensing third parties (specifically including intervenor John Morrell) to use the Cracker Barrel mark on food products in retail or wholesale trade other than through CBOCS' traditional trade channels consisting of CBOCS' restaurants, adjoining CBOCS stores, CBOCS catalogues, CBOCS' internet site, and CBOCS gift cards as currently distributed.

2) This preliminary injunction is conditioned on Kraft's posting of an injunction bond in the sum of $5 million dollars on or before July 8, 2013, on which date the court will hold a status conference at 9:30 a.m.

**ENTER:**	**July 1, 2013**

_____
  Robert W. Gettleman
  United States District Judge